**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

|  |  |  |
|---|---|---|
| ALDERIAN TECHNOLOGIES LLC, | ) ) | Case No. 2:26-cv-00 |
| Plaintiff, | ) ) ) | **JURY TRIAL DEMANDED** |
| v. | ) ) ) | |
| LENOVO GROUP LIMITED, LENOVO INFORMATION PRODUCTS (SHENZHEN) CO. LTD., LCFC (HEFEI) ELECTRONICS TECHNOLOGY CO. LTD., MOTOROLA (WUHAN) MOBILITY TECHNOLOGIES COMMUNICATION COMPANY LIMITED, and LENOVO PC HK LTD., | ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) ) ) | |

**COMPLAINT FOR PATENT INFRINGEMENT**

Plaintiff Alderian Technologies LLC ("Alderian" or "Plaintiff") for its Complaint against

Defendants Lenovo Group Ltd., Lenovo Information Products (Shenzhen) Co. Ltd., LCFC (Hefei)

Electronics Technology Co. Ltd., Motorola (Wuhan) Mobility Technologies Communication

Company Limited, and Lenovo PC HK Ltd. (collectively "Lenovo" or "Defendants") for patent

infringement alleges as follows:

**THE PARTIES**

1.      Alderian is a limited liability company, organized and existing under the laws of

the State of Texas, with its principal place of business located at 104 East Houston Street, Marshall,

Texas 75670.

2.      Defendant Lenovo Group Ltd. is a corporation organized and existing under the

laws of China, with its principal place of business at 23rd Floor, Lincoln House, Taikoo Place, 979

King's Road, Quarry Bay, Hong Kong, S.A.R., China. Lenovo Group Ltd. is a leading manufacturer and seller of smartphones, tablets, and computers in the world and in the United States. On information and belief, Lenovo Group Ltd. does business in Texas, directly or through intermediaries, and offers its products and/or services, including those accused herein of infringement, to customers and potential customers located in Texas, including in the Judicial District of the Eastern District of Texas.

3.      Lenovo Group, Ltd., acting in concert with its subsidiaries and affiliates, manufactures and sells computers and handheld devices worldwide, including throughout the United States and within Texas. In 2019, Lenovo was the world's largest supplier of personal computers—accounting for nearly a quarter of global shipments of personal computers. The Lenovo group of companies—collectively known as "The Lenovo Group" or "Lenovo"—have a global reach and have a strong presence in the United States. Lenovo has approximately 72,000, employees worldwide[1], including thousands in the United States[2], with many people in the United States in management, design, engineering, marketing, and supply chain. Lenovo generates more than $69 billion of goods and services worldwide[3], including over $23 billion in revenues generated for the Americas[4], a substantial portion of which is generated in the United States each year. Lenovo maintains one of its dual headquarters in the United States. Lenovo also maintain a

---

[1] *See* Lenovo Group Ltd. FY2024/2025 Annual Report at 20, 28, available at: https://doc.irasia.com/listco/hk/lenovo/annual/2025/ar2025.pdf.
[2] "Lenovo was included in the inaugural list of America's Dream Employers for 2025 by Forbes, in partnership with Statista. This recognition is a testament to the inclusive culture, the purposeful approach, and the positive environment that Lenovo fosters for its global employee base. Lenovo has received similar recognitions for being an employer of choice. In January 2024, employees voted Lenovo to be one of Glassdoor's Best Places to Work." *See* Lenovo Group Ltd. FY2024/2025     Annual     Report     at     38,     available     at: https://doc.irasia.com/listco/hk/lenovo/annual/2025/ar2025.pdf.
[3] *Id.* at 4.
[4] *Id.* at 188.

pension plan – the "Lenovo Pension Plan" – for employees in the United States who were employees by IBM prior to being hired by Lenovo.[5]

4.      Officers or executives of Lenovo Group, Ltd. (and/or affiliates acting in concert with Lenovo Group, Ltd.) regularly work from and reside in the United States, including in Texas. These officers or executives include at least Laura Quatela, Kurt Skaugen, Matthew Zielinski (Austin, Texas)[6], Doug Fisher, and Arthur Hu. Such officers or executives are involved in the marketing, distribution, sale, import, and use of the Accused Products (defined below in ¶ 38) in the United States. For example, Laura Quatela "has been a Senior Vice President and Chief Legal Officer (subsequently re-designated as Chief Legal and Corporate Responsibility Officer in January 2023) of *the Group* since October 2016 and will retire from the current roles with effect from March 31, 2025. Ms. Quatela is responsible for the Group's legal, IP, government relations and ESG (environmental, social and governance) matters globally. She is a member of certain internal committees of *the Group* and a director of subsidiary(ies) of *the Company*. . . . Ms. Laura Green Quatela will retire as a Senior Vice President and Chief Legal and Corporate Responsibility Officer of *the Group* on March 31, 2025 and has been appointed as a non-executive director of *the Company* and a member of the Nomination and Governance Committee of *the Company*, with effect from April 1, 2025."[7] In the "Changes in Compositions of Board and Board Committees Change of Lead Independent Director and Change in Management," "the Company" is defined as Lenovo Group Ltd., and "the Group is defined as "the 'Company', together with its subsidiaries."[8]

---

[5] *Id.* at 157.

[6] *See* https://www.linkedin.com/in/matthew-zielinski/.

[7] *See* https://www1.hkexnews.hk/listedco/listconews/sehk/2025/0221/2025022100143.pdf; *see also* https://news.lenovo.com/pressroom/press-releases/lenovo-cfo-waiming-wong-and-clo-laura-quatela-to-retire-appointed-non-executive-directors/.

[8] *Id.*

5.  Lenovo Group Ltd. owns or controls, directly or indirectly, each of the Lenovo entities with which it coordinates the infringing sale, offer for sale, import, use, and manufacture of Accused Products in the United States, including the other products. Lenovo Group Ltd. operates and manages a global supply chain to develop, manufacture, and deliver accused computer products and mobile products to the United States, including Texas. At the direction or control of Lenovo Group Ltd., Accused Products are packaged, shipped, and sold to customers in the United States. Lenovo Group Ltd. reports U.S. sales of the Accused Products as its own. Lenovo Group Ltd. advertises that it manufactures most of its products in its own facilities, rather than through third parties. For example, on its website, Lenovo Group Ltd. states: "Ranked #8 in the Gartner Supply Chain Top 25, we serve more than 180 markets and manufacture the majority of our products in our own facilities. This hybrid model helps us bring new innovations to market efficiently while having greater control over product development and global supply chain for advantages in quality, security, and time-to-market."[9] On June 23, 2025, Lenovo posted a press release on its website that Gartner ranked it #8 on their list of Supply Chain Top 25 for 2025 report.[10] In the press release, Lenovo stated: "Lenovo's supply chain spans over 30 manufacturing sites in 11 markets across the Asia Pacific, China, Europe, the Middle East and Africa, *North America*, and South America regions. . . . Lenovo's global manufacturing footprint provides the ultimate flexibility and resilience, enabling the company to respond quickly and navigate any global situation effectively."[11] In the article, Ben Massie, Vice President of Global Supply Chain

---

[9]  *See*  https://www.lenovo.com/il/en/about/what-we-do/?orgRef=https%253A%252F%252Fwww.google.com%252F&srsltid=AfmBOoq7lSZcOXWprvgICt2vDkufUNpdmW2WIiChgc2YzvF4K0JwI3-6.

[10] *See* https://news.lenovo.com/pressroom/press-releases/lenovo-ranks-8th-in-the-gartner-supply-chain-top-25-for-2025/.

[11] *Id.*

for Lenovo's Infrastructure Solutions Group, based out of the United States, said: "As supply chains become more complex, staying resilient is no longer enough. Lenovo is now focused on becoming 'anti-fragile'—not just withstanding disruption but getting stronger because of it."[12]

6.      Defendant Lenovo Information Products (Shenzhen) Co. Ltd. ("Lenovo Shenzhen")[13] is a company organized under the laws of the People's Republic of China. Lenovo Shenzhen has an office at ISH2 Building, 3 Guanglan Road, Futian Free Trade Zone, Shenzhen, 518038, China, and may be served with Process pursuant to the provisions of the Hague Convention. Lenovo Shenzhen may also be served with process by serving the Texas Secretary of State, 1019 Brazos Street, Austin, Texas 78701, as its agent for service because it engages in business in Texas but has not designated or maintained a resident agent for service of process in Texas as required by statute. This action arises out of that business.

7.      Lenovo Shenzhen, an indirect subsidiary of Lenovo Group, Ltd., is involved in the manufacturing and distribution of accused computer devices and other related products. Specifically, Lenovo has a "manufacturing center" in Shenzhen, China, operated by Lenovo Shenzhen. Lenovo Shenzhen has been and is involved in the manufacture of Accused Products that it sells to Lenovo PC HK Ltd., who then sells the Accused Products to Lenovo (United States) Inc. Lenovo Shenzhen knows that the Accused Products it manufactures are intended for the United States market. Further, Lenovo Shenzhen has been and is involved in the shipping of Accused Products, such as notebook and desktop computers, to the United States—both directly and through intermediate Lenovo entities. Lenovo Shenzhen has been and is involved in shipping

---

[12] *Id.*
[13] *See* Lenovo Group Ltd. FY2024/2025 Annual Report at 261, available at: https://doc.irasia.com/listco/hk/lenovo/annual/2025/ar2025.pdf.

at least some of the Accused Products to the United States under the direction or control of Lenovo Group, Ltd., and/or Lenovo PC HK Ltd.

8.      LCFC (Hefei) Electronics Technology Co., Ltd. ("LCFC Hefei") is a company organized under the laws of a foreign jurisdiction. LCFC Hefei has an office at No. 3188-1, Yungu Road, Economic and Technological Development Zone Hefei, Anhui Province, 230601 China, and may be served with Process pursuant to the provisions of the Hague Convention. LCFC Hefei may also be served with process by serving the Texas Secretary of State, 1019 Brazos Street, Austin, Texas 78701, as its agent for service because it engages in business in Texas but has not designated or maintained a resident agent for service of process in Texas as required by statute. This action arises out of that business.

9.      LCFC Hefei, an indirect subsidiary of Lenovo Group Ltd., is involved in the manufacturing and distribution of accused computer devices and other related products. Over 60% of Lenovo laptops are manufactured by LCFC Hefei. Specifically, Lenovo has a "manufacturing center" in Hefei, China, operated by LCFC Hefei. LCFC Hefei has been and is involved in the manufacture of Accused Products that are eventually sold to Lenovo PC HK Ltd., who then sells the Accused Products to Lenovo (United States) Inc. LCFC Hefei knows that the Accused Products it manufactures are intended for the United States market. Further, LCFC has been and is involved in the shipping of Accused Products, such as notebook computers, to the United States—both directly and through intermediate Lenovo entities. LCFC Hefei has been and is involved in shipping at least some of the Accused Products to the United States under the direction or control of Lenovo Group, Ltd., and/or Lenovo PC HK Ltd.

10.      Motorola (Wuhan) Mobility Technologies Communication Company Limited ("Motorola Wuhan") is a wholly-owned subsidiary of Lenovo Group, Ltd. organized under the

laws of China, with a principal place of business located at No. 19, Gaoxin 4th Road, Donghu New Technology Development Zone Wuhan, Hubei, 430205 China, and may be served with process pursuant to the provisions of the Hague Convention. Motorola Wuhan may also be served with process by serving the Texas Secretary of State, 1019 Brazos Street, Austin, Texas 78701, as its agent for service because it engages in business in Texas but has not designated or maintained a resident agent for service of process in Texas as required by statute. This action arises out of that business. On information and belief, Motorola Wuhan acts in concert with, and under the direction and control of, Lenovo Group, Ltd. and/or other Lenovo Group Ltd. subsidiaries/affiliates to sell, offer for sale, import, use, and make the Accused Products in the United States, including mobile products.[14]

11.    Lenovo PC HK Ltd. ("Lenovo PC HK") is a company organized under the laws of Hong Kong, S.A.R. Lenovo PC HK has an office at 23rd Floor, Lincoln House, Taikoo Place, 979 King's Road, Quarry Bay, Hong Kong, S.A.R., China, and may be served pursuant to the provisions of the Hague Convention. Lenovo PC HK may also be served with process by serving the Texas Secretary of State, 1019 Brazos Street, Austin, Texas 78701, as its agent for service because it engages in business in Texas but has not designated or maintained a resident agent for service of process in Texas as required by statute. This action arises out of that business.

12.    Lenovo PC HK, an indirect subsidiary of Lenovo Group, Ltd.[15], is involved in the procurement, marketing, distribution, and sale of accused computer devices and other related products.  In particular, at the direction and control of Lenovo Group, Ltd., Lenovo PC HK

---

[14]    *See* Lenovo Group Ltd. 2023/2024 Annual Report at 262, available at: https://investor.lenovo.com//en/publications/reports.php.
[15]    *See* Lenovo Group Ltd. FY2024/2025 Annual Report at 262, available at: https://doc.irasia.com/listco/hk/lenovo/annual/2025/ar2025.pdf.

procures, makes, sells, offers for sale, imports, and uses Accused Products manufactured for the United States by Lenovo entities, such as LCFC Hefei and Lenovo Centro. That role includes providing manufacturers with designs and specifications of accused computer products destined for the United States.

13.     Further, Lenovo PC HK has been and is involved in the shipping of Accused Products, such as at least computers and tablets, to the United States—both directly and through intermediate Lenovo entities. Lenovo PC HK also has sold and sells accused Lenovo products, such as at least computers and tablets, to at least one U.S. distributor—Lenovo (United States) Inc.—who then re-sells them to Lenovo customers residing in the United States. Lenovo PC HK does the above activities at the instruction and under the supervision of Lenovo Group, Ltd. Defendants are aware that the Accused Products sold in the United States, such as to Lenovo (United States) Inc., are distributed throughout the United States, including in Texas, including at least Houston, Texas.

14.     For example, Lenovo Group Ltd.'s "Standard Purchase Order Terms and Conditions" for Global Procurement available on its website states, "This Purchase Order ("PO") is issued by Lenovo PC HK Limited ("Lenovo") or one of its affiliates to Supplier."[16]

15.     The Defendants identified in paragraphs 2 through 14 above (collectively, "Lenovo") are companies that together—with their affiliates—comprise one of the world's leading manufacturers of computers and computer-related products. Together, the Lenovo Defendants design, manufacture, use, import into the United States, sell, and/or offer for sale in the United States computer devices and other related products.  Lenovo's devices are marketed, offered for sale, and/or sold throughout the United States, including within this District.

---

[16] *See* https://www.lenovo.com/us/en/global_procurement/po-terms-and-conditions/.

16.     The Lenovo Defendants named above and their affiliates are part of the same corporate structure and distribution chain for the making, importing, offering to sell, selling, and using of the accused devices in the United States, including in the State of Texas generally and this judicial district in particular. Defendants engage in coordinated and concerted action to direct the Accused Products throughout the United States, including Texas.

17.     The Lenovo Defendants named above and their affiliates share the same management, common ownership, advertising platforms, facilities, distribution chains and platforms, and accused product lines and products involving related technologies.

18.     In the promotional materials, manuals, guides, terms of use, sales agreements, warranties, or similar documentation related to the Accused Products, the Lenovo Defendants regularly omit which specific Lenovo company or entity is responsible for the documents or associated products, or instead identify "Lenovo" or the "Lenovo Group". As a result, customers of the Accused Products understand that Lenovo Group, Ltd. or the Lenovo Group as a whole, makes and sells the Accused Products.

19.     Lenovo Group Ltd., and Lenovo as a whole, holds itself out as the entity that manufactures, sells, offers to sell, imports, and uses the Accused Products in the United States, including Texas.  For example, the privacy statement of www.lenovo.com states that "[t]his privacy statement applies to data collected through websites owned and operated by Lenovo Group Ltd. and its affiliated group companies ("Lenovo")."[17] Lenovo sells and offers for sale products through its U.S. website, and "Lenovo" (*i.e.* "Lenovo Group Ltd. and its affiliated group companies") imposes the terms of a "Lenovo Sales Agreement" on all customers, including

---

[17] https://www.lenovo.com/us/en/privacy/; *see also* lenovo.com/us/en/legal/ ("The following are terms between you and Lenovo ("we," "us," or "our")."

customers within the United States and Texas.[18] Lenovo Group, Ltd., and Lenovo as a whole, sell the Accused Products directly to customers in the United States, including within Texas, through www.lenovo.com/us/en.

20.    On information and belief, Lenovo Group Ltd. employees and agents, including those of its subsidiaries named herein, regularly travel to the United States and Texas to test, develop, troubleshoot, and demonstrate the Accused Products. For example, "[d]uring FY2024/25, Lenovo launched Lenovo Tech World under the theme "Smart AI for All" across global locations, including *Seattle, Washington, United States*, showcasing latest innovations like AI PCs and Neptune Liquid Cooling technology and strategic initiatives driving Lenovo's AI vision. The event featured keynotes from global tech leaders on AI, computing and industry trends, insights on collaborative innovation with partners and customers*. Directors who participated in the event* gained valuable insights on market trends, Lenovo's innovative approaches to industry challenges, and strategic initiatives driving sustainable growth. These engagements strengthened their ability to provide informed oversight of Lenovo's technology advancement and long-term corporate vision."

---

[18] https://www.lenovo.com/us/en/terms-and-conditions/.



During FY2024/25, Lenovo launched **Lenovo Tech World** under the theme "Smart AI for All" across global locations, including Seattle, Washington, United States, showcasing latest innovations like AI PCs and Neptune™ Liquid Cooling technology and strategic initiatives driving Lenovo's AI vision. The event featured keynotes from global tech leaders on AI, computing and industry trends, insights on collaborative innovation with partners and customers. Directors who participated in the event gained valuable insights on market trends, Lenovo's innovative approaches to industry challenges, and strategic initiatives driving sustainable growth. These engagements strengthened their ability to provide informed oversight of Lenovo's technology advancement and long-term corporate vision.

[19]

Lenovo has held the Tech World event for ten (10) consecutive years.[20]

21.    By way of further example, "[i]n directors participated in immersive site visits to key Lenovo facilities including ***Motorola's Chicago laboratory***, Hefei's LCFC factory, and Shenzhen plant."

---

[19] *See* Lenovo Group Ltd. FY2024/2025 Annual Report at 76, available at https://doc.irasia.com/listco/hk/lenovo/annual/2025/ar2025.pdf.

[20] *See* https://news.lenovo.com/pressroom/press-releases/techworld24/ ("On October 15, 2024, Lenovo will host its annual global innovation event, Tech World, in Bellevue, Washington. This marks the 10th consecutive year of the event and reflects a decade of innovation and transformation from the company."



Site visits and product demonstrations

In FY2024/25, directors participated in immersive site visits to key Lenovo facilities including Motorola's Chicago laboratory, Hefei's LCFC factory, and Shenzhen plant.

These visits featured hands-on demonstrations of Motorola's AI-powered devices and Lenovo's evolving PC, mobile, server innovations. Through these engagements, directors gained firsthand exposure to Lenovo's innovative products and ideas and cutting-edge smart manufacturing ecosystem and capabilities – from Lenovo's heritage to future vision, from production lines to ESG initiatives. The experiences provided directors with tangible insights into how innovation and operational excellence drive Lenovo's strategic objectives.

[21]

22.     By way of further example, "In order to keep *directors* updated with the latest technologies and products development in the industry, *directors were invited to attend Consumer Electronic Show (CES) in Las Vegas in January 2025* and Mobile World Congress (MWC) in Barcelona in March 2025. These two events provided the best product reviews, *demonstrations and displays* that showcase the technologies leveraging the power of AI both from the Group and other market players."

---

[21]    *See* Lenovo Group Ltd. FY2024/2025 Annual Report at 77, available at https://doc.irasia.com/listco/hk/lenovo/annual/2025/ar2025.pdf.



23.     On information and belief, Lenovo Group Ltd. also directly maintains Lenovo Research and the Advanced AI Technology Center. "In April 2025, Lenovo established its CTO Organization to spearhead the company's technology strategy, coordinate global R&D efforts, and accelerate the commercialization of innovations. The organization is anchored by two major R&D engines: Lenovo Research and the Advanced AI Technology Center (AAITC). Founded in 1999, Lenovo Research has been powering Lenovo's high-tech products and services with cutting-edge technologies. The AAITC, launched in 2025, serves as Lenovo's hub for applied AI technologies."[23] Moreover, the "Lenovo CTO Organization is a global corporate R&D institution

---

[22] *Id.* at 78.

[23] https://research.lenovo.com/webapp/view_English/home.html

with research centers located in Beijing, Shanghai, Shenzhen, Tianjin, and Wuhan in China; *Raleigh, Chicago*, and *Silicon Valley* in the United States; and Yokohama, Japan."[24] In 2010, Lenovo Research developed Lenovo's first smartphone – Le Phone.[25] The head of the Lenovo CTO Organization is Tolga Kurtoglu[26], who is also the Senior Vice President and Chief Technology Office of Lenovo Group Ltd.[27], and is based out of the United States.[28] Many of the technologies developed by at least Lenovo Research have been demonstrated in the United States, including at CES in Las Vegas.[29]

24.     The Lenovo Defendants named above and their affiliates operate as a unitary business venture and are both jointly and severally liable for the acts of patent infringement alleged herein.

## JURISDICTION AND VENUE

25.     This is an action for patent infringement arising under the patent laws of the United States, 35 U.S.C. §§ 1, *et seq*.  This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338(a).

26.     This Court has personal jurisdiction over Defendants. Defendants regularly conduct business and have committed acts of patent infringement and/or have induced acts of patent infringement by others in this Judicial District and/or have contributed to patent infringement by

---

[24] https://research.lenovo.com/webapp/view_English/newsDetails.html?id=147.
[25] *Id.*
[26] https://research.lenovo.com/webapp/view_English/home.html#:~:text=Tolga%20Kurtoglu,in%E2%80%9D%20lifestyle%20for%20global%20users.
[27] See Lenovo Group Ltd. FY2024/2025 Annual Report at 12, available at https://doc.irasia.com/listco/hk/lenovo/annual/2025/ar2025.pdf.
[28] https://www.linkedin.com/in/tolga-kurtoglu/.
[29]     https://news.lenovo.com/pressroom/press-releases/at-the-2024-international-consumer-electronics-show-ces-which-opened-in-las-vegas-u-s-on-jan-9-lenovo-showcased-many-new-products-and-solutions-many-of-the-products-and-solutions-are-equipped/.

others in this Judicial District, the State of Texas, and elsewhere in the United States. Defendants, directly and/or through subsidiaries or intermediaries, have committed and continue to commit acts of infringement in this District by, among other things, making, using, importing, offering to sell, and/or selling products that infringe the Patents-in-Suit. Courts in Texas, including within this Judicial District, have concluded that at least Lenovo Group Ltd. is subject to personal jurisdiction in the State of Texas. *See ACQIS LLC v. Lenovo Grp. Ltd.*, 572 F. Supp. 3d 291, 307 (W.D. Tex. 2021) ("this Court finds that the exercise of personal jurisdiction over [Lenovo Group Ltd.] is both reasonable and fair."); *see also AX Wireless LLC v. Lenovo Grp. Ltd.*, No. 2:22-cv-00280-RWS-RSP, Dkt. No. 110 (report and recommendation) (E.D. Tex. Sept. 6, 2023) ("exercising personal jurisdiction [over Lenovo Grp. Ltd.] would not offend traditional notions of fair place and substantial justice."). These prior decisions were recently confirmed in this District in *Universal Connectivity Techs. Inc. v. Lenovo Grp. Ltd.*, No. 2:23-CV-00449-JRG, 2024 WL 4519760 (E.D. Tex. Oct. 17, 2024) and *Eireog Innovations Ltd. v. Lenovo Grp. Ltd.*, No. 2:24-CV-00239-JRG, 2024 WL 4519763, at *1 (E.D. Tex. Oct. 17, 2024). To the extent at least Lenovo Group Ltd. has or will seek to contest personal jurisdiction, the Federal Circuit denied Lenovo Group Ltd.'s requests for a writ of mandamus seeking to challenge the findings of courts in this District, based on "open factual disputed as to whether [Lenovo] created, controls, or directs its subsidiaries to place the allegedly infringing products into the stream of commerce in Texas." *In re Lenovo Grp. Ltd.*, No. 2025-111, 2025 WL 685914, at *1 (Fed. Cir. Mar. 4, 2025).

27.     Lenovo induces its subsidiaries, affiliates, retail partners, and customers to make, use, sell, offer for sale, and/or import throughout the United States, including within this Judicial District, infringing products and placing such products into the stream of commerce via established distribution channels knowing or understanding that such products would be sold and used in the

United States, including in the Eastern District of Texas. Paragraphs 1 through 26 are incorporated by reference as if fully set forth herein. Lenovo purposefully directs the infringing products identified herein into established distribution channels within this District and the U.S. nationally. For example, Lenovo sells and offers to sell the infringing products through its websites, Lenovo.com and Motorola.com, which may be accessed throughout the United States, the State of Texas, and this Judicial District. Additionally, Lenovo has authorized sellers and sales representatives that offer for sale and sell the infringing products throughout the State of Texas and to consumers throughout this District, including at the following locations in this District: Best Buy, 422 West Loop 281, Suite 100, Longview, Texas 75605; Costco Wholesale, 3650 West University Drive, McKinney, Texas 75071; Office Depot, 422 West Loop 281, Suite 300, Longview, Texas 75605; Target, 3092 North Eastman Road, Suite 100, Longview, Texas 75605; Wal-Mart, 1701 East End Boulevard North, Marshall, Texas 75670; Verizon, 500 E Loop 281, Longview, TX 75670; AT&T, 1712 E Grand Ave, Marshall, TX 75670; T-Mobile, 1806 E. End Blvd., N. Ste 100, Marshall, TX 75670.

28.     Lenovo maintains regular and established places of business in in this Judicial District, the State of Texas, and elsewhere in the United States, including a Sales Office in Fort Worth, Texas.[30] Lenovo also advertises for jobs in the State of Texas.[31] Lenovo also maintains

---

[30]https://www.lenovo.com/us/en/about/locations/?orgRef=https%253A%252F%252Fwww.googl e.com%252F&cid=us:sem|se|google|pmax_smb_pcs||||18337003604|||shopping|mix|commercialc onsumer&gad_source=1&gclid=CjwKCAjwvvmzBhA2EiwAtHVrb-yDPR8mEb0OOJoQq7k6lSpSZJTL4W1Ucy0kqq6ZBDwyz4H5zd7rSBoC6NQQAvD_BwE.

[31] *See, e.g.,* https://jobs.lenovo.com/en_US/careers/JobDetail/Global-Account-Manager/67745. ("This role is based in Houston, Texas. As a Global Account Manager for the Energy / Oil & Gas vertical, you will be responsible for driving strategic engagement, revenue growth, and long-term partnership with key global clients in the sector. This high-impact role requires a deep understanding of the industry's unique challenges and technology needs, coupled with strong relationship management and commercial acumen. You will serve as the primary interface

16

Lenovo Authorized Service Providers (ASPs) in this Judicial District, the State of Texas, and

elsewhere in the United States.





<hr>

between Lenovo and executive-level stakeholders across customer accounts, orchestrating cross-functional collaboration to deliver One Lenovo solutions.").

[32] *See, e.g.,* https://support.lenovo.com/us/en/lenovo-service-provider. Displaying result for "Warranty and Support Provider" for "Home" within 500 miles of 200 W Houston St, Marshall, TX 75670, USA. ("A Lenovo Service Center is an authorized facility where customers can seek professional assistance for their Lenovo devices.  These centers employ trained technicians who specialize in Lenovo products and provide services such as diagnostics, repairs, hardware upgrades, and software installations.").[32]

Defendant also maintains authorized resellers of its products in this Judicial District, in the State of Texas, and throughout the United States.



At these various locations, Lenovo maintains authorized sellers, sales representatives, and customer service agents that offer, sell, and service Defendant's products in this Judicial District, the State of Texas, and elsewhere in the United States.

29.    Furthermore, Lenovo Group Ltd. provides "Hardware Maintenance Manuals" for the Accused Products in the United States which bear a "Lenovo" copyright without specifying

---

[33] *Id.* Search results for "Reseller" for "Business" within 500 miles of 200 W Houston St, Marshall, TX 75670, USA.

any particular Lenovo entity, and which are "delivered pursuant to a General Services Administration "GSA" contract. These manuals specify that they are "printed in China."  These English language manuals demonstrate Lenovo's knowledge and intent that for the Accused Products to be sold throughout the United States, including Texas.

30.     In addition, or in the alternative, this Court has personal jurisdiction over Defendants pursuant to Fed. R. Civ. P. 4(k)(2), including Lenovo Group Ltd.

31.     Venue is proper in this Judicial District pursuant to 28 U.S.C. § 1391 because, among other things, Defendants do not reside in the United States and thus may be sued in any judicial district pursuant to 28 U.S.C. § 1391(c)(3).

32.     Defendants are subject to this Court's jurisdiction pursuant to due process and/or the Texas Long Arm Statute due at least to their substantial business in this State and Judicial District, including (a) at least part of its past infringing activities, (b) regularly doing or soliciting business in Texas, and/or (c) engaging in persistent conduct and/or deriving substantial revenue from goods and services provided to customers in Texas.

## PATENTS-IN-SUIT

33.     On May 5, 2020, the United States Patent and Trademark Office duly and legally issued U.S. Patent No. 10,645,387 (the "'387 Patent") entitled "Predictive Quantization Coding Method and Video Compression System." A true and correct copy of the '387 Patent is available at: https://patentimages.storage.googleapis.com/0a/76/4b/4790b52e40849e/US10645387.pdf.

34.     On June 16, 2015, the United States Patent and Trademark Office duly and legally issued U.S. Patent No. 9,060,172 (the "'172 Patent") entitled "Methods and Systems for Mixed Spatial Resolution Video Compression." A true and correct copy of the '172 Patent is available at: https://patentimages.storage.googleapis.com/36/db/91/8b9678905bdceb/US9060172.pdf.

19

35.     Alderian is the sole and exclusive owner of all right, title, and interest in the'387 Patent and the '172 Patent (collectively, the "Patents-in-Suit" or "Asserted Patents") and holds the exclusive right to take all actions necessary to enforce its rights to the Patents-in-Suit, including the filing of this patent infringement lawsuit. Alderian also has the right to recover all damages for past, present, and future infringement of the Patents-in-Suit and to seek injunctive relief as appropriate under the law.

36.     Alderian has at all times complied with the marking provisions of 35 U.S.C. § 287 with respect to the Patents-in-Suit. On information and belief, prior assignees and licensees have also complied with the marking provisions of 35 U.S.C. § 287. Alternatively, on information and belief, no patented articles have ever been produced requiring marking.

## FACTUAL ALLEGATIONS

37.     The '387 Patent generally relates to systems and methods for predictive quantization coding and video compression. The technology described in the '387 Patent was developed by Quingdong Yue, Wenfang Ran, and Wen Li. For example, the technology of the '387 Patent is implemented today by products that contain SoCs, chipsets, software, and/or GPUs, which utilize hardware and software encoders perform predictive quantization coding and block-based depth map coding, including, but not limited to, Lenovo smartphones, tablets, laptops, workstations, and desktops, among other Lenovo products.

38.     The '172 Patent generally relates to systems and methods for encoding a frame of visual data. The technology of the '172 Patent was developed by Walter Paul, Arkady Kopansky, and Hui Cheng. For example, the technology of the '172 Patent is implemented today by products that contain SoCs, chipsets, software, and/or GPUs, which utilize hardware and software encoders and decoders that perform mixed spatial resolution video compression, including, but not limited

20

to, Lenovo smartphones, tablets, laptops, workstations, and desktops, among other Lenovo products (collectively with the products identified in ¶ 37, the "Accused Products").

39.    Lenovo has infringed and is continuing to infringe the Patents-in-Suit by making, using, selling, offering to sell, and/or importing, and by actively inducing others to make, use, sell, offer to sell, and/or importing, products including, but not limited, the Accused Products.

## COUNT I
### (Infringement of the '387 Patent)

40.    Paragraphs 1 through 39 are incorporated by reference as if fully set forth herein.

41.    Alderian has not licensed or otherwise authorized Defendants to make, use, offer for sale, sell, or import any products that embody the inventions of the '387 Patent.

42.    Defendants have and continue to directly infringe the '387 Patent, either literally or under the doctrine of equivalents, without authority and in violation of 35 U.S.C. § 271, by making, using, offering to sell, selling, and/or importing into the United States products that satisfy each and every limitation of one or more claims of the '387 Patent. Such infringing products include Lenovo smartphones, tablets, laptops, workstations, and desktops that contain SoCs, chipsets, software, and/or GPUs, which utilize hardware and software encoders that perform predictive quantization coding, including, but not limited to, the Lenovo Tab Extreme equipped with the MediaTek Dimensity 9000 SoC, as well as other hardware and software encoders, among other Lenovo products.

43.    For example, Defendants have and continue to directly infringe at least claim 1 of the '387 Patent by making, using, offering to sell, selling, and/or importing into the United States products that include the Lenovo Tab Extreme, among other Lenovo products. The Lenovo Tab Extreme is exemplary and representative of how the accused infringing products infringe the '387 Patent.

21

44.     For example, the Lenovo Tab Extreme performs a quantization coding method, comprising the steps of: (a) dividing a pixel to be processed into a plurality of pixel components, wherein pixels of an image are sequentially taken as the pixel to be processed; (b) obtaining one pixel component to be processed from the plurality of pixel components; (c) obtaining texture direction gradients of the pixel component to be processed; (d) obtaining reference pixels according to the texture direction gradients and positional relationships between the pixel component to be processed and A remaining of the plurality of pixel components; (e) obtaining a prediction residual of the pixel component to be processed according to the reference pixels; (f) repeating steps (b) to (e), and taking each pixel component of the plurality of pixel components and obtaining the prediction residual corresponding thereto, and forming a prediction residual code stream including the prediction residuals of the pixel to be processed of the image; (g) dividing the prediction residual code stream into a plurality of quantization units each including a predetermined number of prediction residuals divided from the prediction residual code stream; and (h) obtaining first rate distortion optimizations and second rate distortion optimizations corresponding to the plurality of quantization units to obtain a quantization residual code stream (e.g., HEVC and/or other codecs use an inter-/intra-picture prediction with an algorithm that process blocks of data in a region according to neighboring regions/pixels to predict the value of the current pixel).

45.     On information and belief, at least MediaTek's codec components and related software codecs come preinstalled on devices with MediaTek SoCs.

46.     For example, the Accused Products include MediaTek codecs for video encoding and compression.



47.    For example, such as in operation with HEVC and other codecs, MediaTek SoCs

---

34

https://android.googlesource.com/kernel/common/+/613725436e69f/drivers/media/platform/mtk-vcodec (last accessed on or about May 1, 2026).

35 *See, e.g.*, https://android.googlesource.com/kernel/mediatek/%2B/android-mtk-3.18/drivers/misc/mediatek/videocodec/include/venc_drv_if_public.h, at lines 59-80 (last accessed on or about May 1, 2026).

can code units in an intra prediction mode.

> **8.4.4.2    Intra sample prediction**
>
> **8.4.4.2.1    General intra sample prediction**
>
> Inputs to this process are:
>
> – a sample location ( xTbCmp, yTbCmp ) specifying the top-left sample of the current transform block relative to the top-left sample of the current picture,
>
> – a variable predModeIntra specifying the intra prediction mode,
>
> – a variable nTbS specifying the transform block size,
>
> – a variable cIdx specifying the colour component of the current block.
>
> Outputs of this process are the predicted samples predSamples[ x ][ y ], with x, y = 0..nTbS − 1. [36]

48.    By way of further example, H.265 V11 can recognize supplemental encoder-optimization information that can include quantization-related information.

> **D.4.5    Use of the encoder optimization information SEI messages**
>
> For purposes of interpretation of the encoder optimization information SEI message, the following variables are derived separately for each picture to which the encoder optimization information SEI message applies as follows:
>
> – CroppedWidth is set equal to pic_width_in_luma_samples − SubWidthC * ( conf_win_left_offset + conf_win_right_offset ).
>
> – CroppedHeight is set equal to pic_height_in_luma_samples − SubHeightC * ( conf_win_top_offset + conf_win_bottom_offset ).
>
> – PicQuant is set equal to 26 + init_qp_minus26 + slice_qp_delta of the first slice segment of the picture.
>
> When eoi_pic_quant_object_flag is equal to 1 and eoi_quant_threshold_delta is greater than 0, ( PicQuant + eoi_quant_threshold_delta ) shall be less than or equal to 51. When eoi_pic_quant_object_flag is equal to 0 and eoi_quant_threshold_delta is greater than 0, ( PicQuant − eoi_quant_threshold_delta ) shall be greater than or equal to −QpBdOffset. [37]

49.    On information and belief, Defendants' direct infringement of the '387 Patent includes, but is not limited to, testing, development, troubleshooting, and other use in the United States. Defendants also use the Accused Products at tradeshows in the United States to promote

---

[36] *See* Int'l Telecomm. Union, Recommendation ITU-T H.265, *High Efficiency Video Coding* § 8.4, at 135 (Version 8, Aug. 2021), available at: https://e2e.ti.com/cfs-file/__key/communityserver-discussions-components-files/791/T_2D00_REC_2D00_H.265_2D00_202108_2D00_S_21002100_PDF_2D00_E.pdf; *see also Id.* at 126-142.

[37] *See* Int'l Telecomm. Union, Recommendation ITU-T H.265, *High Efficiency Video Coding*, at 424 (Version 11, Jan. 2026), available at: https://www.itu.int/rec/T-REC-H.265-202601-I.

the sale of the Accused Products, as demonstrated above.

50.     Defendants have and continue to indirectly infringe one or more claims of the '387 Patent by knowingly and intentionally inducing others, including Lenovo customers and end-users, to directly infringe, either literally or under the doctrine of equivalents, by making, using, offering to sell, selling and/or importing into the United States products that include infringing technology.

51.     Defendants, with knowledge that these products, or the use thereof, infringe the '387 Patent at least as of the date of this Complaint, knowingly and intentionally induced, and continues to knowingly and intentionally induce, direct infringement of the '387 Patent by providing these products to end users for use in an infringing manner. Alternatively, on information and belief, Defendants have adopted a policy of not reviewing the patents of others, and instructing their officers, agents, and employees to not review the patents of others, including specifically those related to Defendants' specific industry, with the subject belief that there was a high probability that Defendants would learn of their infringing activities, thereby remaining willfully blind to the '387 Patent at least as early as the issuance of the '387 Patent.

52.     Defendants have induced infringement by others, including end users, with the intent to cause infringing acts by others or, in the alternative, with the belief that there was a high probability that others, including end users, infringe the '387 Patent, but while remaining willfully blind to the infringement. Defendants have and continue to induce infringement by their customers and end-users by supplying them with instructions on how to operate the infringing technology in an infringing manner, while also making publicly available information on the infringing technology via Defendants' website, product literature and packaging, and other publications. For example, Lenovo makes available to its customers and end-users various materials that instruct them on how to use Lenovo products in an infringing manner based on the product. These include,

but are not limited to, Installation Guides, User Guides, Quick Start Guides, Deployments Guides,

Hardware Maintenance Manuals, Service Manuals, and Warranty and Safety Booklets.



38

53.     On information and belief, these instructional materials are prepared by Defendants

or at the direction of Defendants. Because of Defendants' inducement, Defendants' customers and

end-users use the Accused Products in a way Defendants intend and directly infringe the '387

Patent. Defendants perform these affirmative acts with knowledge of the '387 Patent and with the

intent, or willful blindness, that the induced acts directly infringe the '387 Patent.

---

38 *See*
https://support.lenovo.com/us/en/solutions/ht077589?cid=us%3Asem%7Cse%7Cgoogle%7Csub
brand_pc_yoga%7Cconsumer_premium_notebook_intel_generic%7Clenovo%20yoga%20best%
20laptop%7C%7C1608826469%7C109634463536%7Caud-939327936634%3Akwd-
356072536731%7Csearch%7C%7Cconsumer&gad_source=1&gad_campaignid=1608826469&
gbraid=0AAAAADnnO-
UZ215b_W1VwBgZJDmJZoZ3A&gclid=Cj0KCQjws83OBhD4ARIsACblj19G4GCqkRNX3g
wVh6EgvoKMPziXrvvoiio_uRlxoTzYM9UAr4zBlIAaAtBBEALw_wcB; *see also* https://en-
us.support.motorola.com/app/home/.

54.    Defendants have indirectly infringed and continue to indirectly infringe one or more claims of the '387 Patent, as provided by 35 U.S.C. § 271(c), by contributing to direct infringement by others, such as customers and end-users, in this District and elsewhere in the United States. Defendants' affirmative acts of selling and offering to sell the Accused Products in this District and elsewhere in the United States and causing the Accused Products to be manufactured, used, sold, and offered for sale contributes to others' use and manufacture of the Accused Products such that the '387 Patent is directly infringed by others. The accused components within the Accused Products are material to the invention of the '387 Patent, including at least video encoders, are not staple articles or commodities of commerce, have no substantial non-infringing uses, and are known by Defendants to be especially made or adapted for use in the infringement of the '387 Patent. Defendants perform these affirmative acts with knowledge of the '387 Patent and with intent, or willful blindness, that they cause the direct infringement of the '387 Patent.

55.    Alderian has suffered damages as a result of Defendants' direct and indirect infringement of the '387 Patent in an amount to be proven at trial.

56.    Alderian has suffered, and will continue to suffer, irreparable harm as a result of Defendants' infringement of the '387 Patent, for which there is no adequate remedy at law, unless Defendants' infringement is enjoined by this Court.

## COUNT II
### (Infringement of the '172 Patent)

57.    Paragraphs 1 through 39 are incorporated by reference as if fully set forth herein.

58.    Alderian has not licensed or otherwise authorized Defendants to make, use, offer for sale, sell, or import any products that embody the inventions of the '172 Patent.

59.    Defendants have and continue to directly infringe the '172 Patent, either literally or under the doctrine of equivalents, without authority and in violation of 35 U.S.C. § 271, by making,

using, offering to sell, selling, and/or importing into the United States products that satisfy each and every limitation of one or more claims of the '172 Patent. Such infringing products include Lenovo smartphones, tablets, laptops, workstations, and desktops that contain SoCs, chipsets, software, and/or GPUs, which utilize hardware and software encoders and decoders that perform mixed spatial resolution video compression, including, but not limited to, the Lenovo Tab Extreme equipped with the MediaTek Dimensity 9000 SoC, as well as other hardware and software encoders and decoders, among other Lenovo products.

60.    For example, Defendants have and continue to directly infringe at least claim 1 of the '172 Patent by making, using, offering to sell, selling, and/or importing into the United States products that include the Lenovo Tab Extreme, among other Lenovo products. The Lenovo Tab Extreme is exemplary and representative of how the accused infringing products infringe the '172 Patent.

61.    For example, the Lenovo Tab Extreme performs a computer implemented method of video compression, the method comprising the steps of: generating a reconstructed full resolution frame and coded data corresponding to the reconstructed full resolution frame from an original full resolution frame; generating an upsampled reconstructed reduced spatial resolution frame and coded data corresponding to the upsampled reconstructed reduced spatial resolution frame from the original full resolution frame; determining a first deviation by comparing at least one characteristic in the reconstructed full resolution frame with said at least one characteristic in the original full resolution frame; determining a second deviation by comparing said at least one characteristic in the upsampled reconstructed reduced spatial reduced resolution frame with said at least one characteristic in the original full resolution frame; and outputting the coded data corresponding to the reconstructed full resolution frame when the first deviation is less than the

28

second deviation; otherwise outputting the coded data corresponding to the upsampled reconstructed reduced spatial reduced resolution frame.

62.    On information and belief, at least MediaTek's codec components and related software codecs come preinstalled on devices with MediaTek SoCs.

63.    For example, the Accused Products include MediaTek codecs for video encoding and compression.



39

https://android.googlesource.com/kernel/common/+/613725436e69f/drivers/media/platform/mtk-vcodec (last accessed on or about May 1, 2026).

```
/**
 * @par Enumeration
 *    VENC_DRV_VIDEO_FORMAT_T
 * @par Description
 *    This is the item used for encode video format
 */
typedef enum __VENC_DRV_VIDEO_FORMAT_T {
        VENC_DRV_VIDEO_FORMAT_NONE,              /* /< Default value (not used) */
        VENC_DRV_VIDEO_FORMAT_MPEG4,             /* /< MPEG4 video format */
        VENC_DRV_VIDEO_FORMAT_MPEG4_1080P,       /* /< MPEG4 video format for 1080p */
        VENC_DRV_VIDEO_FORMAT_MPEG4_SHORT,       /* /< MPEG4_SHORT (H.263 baseline profile) video format */
        VENC_DRV_VIDEO_FORMAT_H263,              /* /< H.263 video format */
        VENC_DRV_VIDEO_FORMAT_H264,              /* /< H.264 video format */
        VENC_DRV_VIDEO_FORMAT_H264_VGA,          /* /< H.264 video format for VGA */
        VENC_DRV_VIDEO_FORMAT_WMV9,              /* /< WMV9 video format */
        VENC_DRV_VIDEO_FORMAT_VC1,               /* /< VC1 video format */
        VENC_DRV_VIDEO_FORMAT_VP8,               /* /< VP8 video format */
        VENC_DRV_VIDEO_FORMAT_JPEG,              /* /< JPEG picture format */
        VENC_DRV_VIDEO_FORMAT_HEVC,              /* /< HEVC video format */
        VENC_DRV_VIDEO_FORMAT_H264SEC,           /* /<: Secure H.264 */
        VENC_DRV_VIDEO_FORMAT_MAX = 0xFFFFFFFF   /* /< Max VENC_DRV_VIDEO_FORMAT_T value */
} VENC_DRV_VIDEO_FORMAT_T;
```
[40]

64.    For example, such as in operation with HEVC and other codecs, MediaTek SoCs can code units in an intra prediction mode.[41] By way of further example, H.265 V11 can recognize supplemental encoder-optimization information that can include quantization-related information.

---

**D.4.5    Use of the encoder optimization information SEI messages**

For purposes of interpretation of the encoder optimization information SEI message, the following variables are derived separately for each picture to which the encoder optimization information SEI message applies as follows:

– CroppedWidth is set equal to pic_width_in_luma_samples − SubWidthC * ( conf_win_left_offset + conf_win_right_offset ).

– CroppedHeight is set equal to pic_height_in_luma_samples − SubHeightC * ( conf_win_top_offset + conf_win_bottom_offset ).

– PicQuant is set equal to 26 + init_qp_minus26 + slice_qp_delta of the first slice segment of the picture.

When eoi_pic_quant_object_flag is equal to 1 and eoi_quant_threshold_delta is greater than 0, ( PicQuant + eoi_quant_threshold_delta ) shall be less than or equal to 51. When eoi_pic_quant_object_flag is equal to 0 and eoi_quant_threshold_delta is greater than 0, ( PicQuant − eoi_quant_threshold_delta ) shall be greater than or equal to −QpBdOffset.

[42]

---

[40] *See, e.g.*, https://android.googlesource.com/kernel/mediatek/%2B/android-mtk-3.18/drivers/misc/mediatek/videocodec/include/venc_drv_if_public.h, at lines 59-80 (last accessed on or about May 1, 2026).

[41] *See, e.g.,* Int'l Telecomm. Union, Recommendation ITU-T H.265, *High Efficiency Video Coding*, at 126-142. (Version 8, Aug. 2021), available at: https://e2e.ti.com/cfs-file/__key/communityserver-discussions-components-files/791/T_2D00_REC_2D00_H.265_2D00_202108_2D00_S_21002100_PDF_2D00_E.pdf.

[42] *See* Int'l Telecomm. Union, Recommendation ITU-T H.265, *High Efficiency Video Coding* (Version 11, Jan. 2026), at 424 (Version 11, Jan. 2026), available at: https://www.itu.int/rec/T-REC-H.265-202601-I.

65.     On information and belief, Defendants' direct infringement of the '172 Patent includes, but is not limited to, testing, development, troubleshooting, and other use in the United States. Defendants also use the Accused Products at tradeshows in the United States to promote the sale of the Accused Products, as demonstrated above.

66.     Defendants have and continue to indirectly infringe one or more claims of the '172 Patent by knowingly and intentionally inducing others, including Lenovo customers and end-users, to directly infringe, either literally or under the doctrine of equivalents, by making, using, offering to sell, selling and/or importing into the United States products that include infringing technology.

67.     Defendants, with knowledge[43] that these products, or the use thereof, infringe the '172 Patent at least as of the date of this Complaint, knowingly and intentionally induced, and continues to knowingly and intentionally induce, direct infringement of the '172 Patent by providing these products to end users for use in an infringing manner. Alternatively, on information and belief, Defendants have adopted a policy of not reviewing the patents of others, and instructing their officers, agents, and employees to not review the patents of others, including specifically those related to Defendants' specific industry, with the subject belief that there was a high probability that Defendants would learn of their infringing activities, thereby remaining willfully blind to the '172 Patent at least as early as the issuance of the '172 Patent.

68.     Defendants have induced infringement by others, including end users, with the intent to cause infringing acts by others or, in the alternative, with the belief that there was a high probability that others, including end users, infringe the '172 Patent, but while remaining willfully blind to the infringement. Defendants have and continue to induce infringement by their customers

---

[43] Motorola, Inc. cited to the '172 Patent family in connection with its U.S. Patent Application No. 12/795,200, filed on June 7, 2010, and U.S. Patent Application No. 12/795,232. *See* https://patents.google.com/patent/US9060172B2/en?oq=US9060172B2#citedBy.

and end-users by supplying them with instructions on how to operate the infringing technology in an infringing manner, while also making publicly available information on the infringing technology via Defendants' website, product literature and packaging, and other publications. For example, Lenovo makes available to its customers and end-users various materials that instruct them on how to use Lenovo products in an infringing manner based on the product. These include, but are not limited to, Installation Guides, User Guides, Quick Start Guides, Deployments Guides, Hardware Maintenance Manuals, Service Manuals, and Warranty and Safety Booklets.



[44]

---

[44] *See* https://support.lenovo.com/us/en/solutions/ht077589?cid=us%3Asem%7Cse%7Cgoogle%7Csub brand_pc_yoga%7Cconsumer_premium_notebook_intel_generic%7Clenovo%20yoga%20best% 20laptop%7C%7C1608826469%7C109634463536%7Caud-939327936634%3Akwd-356072536731%7Csearch%7C%7Cconsumer&gad_source=1&gad_campaignid=1608826469& gbraid=0AAAAADnnO-UZ215b_W1VwBgZJDmJZoZ3A&gclid=Cj0KCQjws83OBhD4ARIsACblj19G4GCqkRNX3g wVh6EgvoKMPziXrvvoiio_uRlxoTzYM9UAr4zBlIAaAtBBEALw_wcB; *see also* https://en-us.support.motorola.com/app/home/.

69.     On information and belief, these instructional materials are prepared by Defendants or at the direction of Defendants. Because of Defendants' inducement, Defendants' customers and end-users use the Accused Products in a way Defendants intend and directly infringe the '172 Patent. Defendants perform these affirmative acts with knowledge of the '172 Patent and with the intent, or willful blindness, that the induced acts directly infringe the '172 Patent.

70.     Defendants have indirectly infringed and continue to indirectly infringe one or more claims of the '172 Patent, as provided by 35 U.S.C. § 271(c), by contributing to direct infringement by others, such as customers and end-users, in this District and elsewhere in the United States. Defendants' affirmative acts of selling and offering to sell the Accused Products in this District and elsewhere in the United States and causing the Accused Products to be manufactured, used, sold, and offered for sale contributes to others' use and manufacture of the Accused Products such that the '172 Patent is directly infringed by others. The accused components within the Accused Products are material to the invention of the '172 Patent, including at least video encoders and decoders, are not staple articles or commodities of commerce, have no substantial non-infringing uses, and are known by Defendants to be especially made or adapted for use in the infringement of the '172 Patent. Defendants perform these affirmative acts with knowledge of the '172 Patent and with intent, or willful blindness, that they cause the direct infringement of the '172 Patent.

71.     Alderian has suffered damages as a result of Defendants' direct and indirect infringement of the '172 Patent in an amount to be proven at trial.

72.     Alderian has suffered, and will continue to suffer, irreparable harm as a result of Defendants' infringement of the '172 Patent, for which there is no adequate remedy at law, unless Defendants' infringement is enjoined by this Court.

## **DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a jury for all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, Alderian prays for relief against Defendants as follows:

a.      Entry of judgment declaring that Defendants have directly and/or indirectly infringed one or more claims of each of the Patents-in-Suit;

b.      An order pursuant to 35 U.S.C. § 283 permanently enjoining Defendants, their officers, agents, servants, employees, attorneys, and those persons in active concert or participation with them, from further acts of infringement of one or more of the Patents-in-Suit;

c.      An order awarding damages sufficient to compensate Plaintiff for Defendants' infringement of the Patents-in-Suit, but in no event less than a reasonable royalty, together with interest and costs;

d.      Entry of judgment declaring that this case is exceptional and awarding Plaintiff its costs and reasonable attorney fees under 35 U.S.C. § 285; and

e.      Such other and further relief as the Court deems just and proper.

Dated: May 26, 2026                          Respectfully submitted,

 _/s/ John Andrew Rubino_
John Andrew Rubino
NY Bar No. 5020797
Email: jarubino@rubinoip.com
Michael Mondelli III
NY Bar No. 5805114
Email: mmondelli@rubinoip.com
**RUBINO IP**
1200 Harbor Blvd., 10th Floor
Weehawken Township, NJ 07086
Telephone: (201) 341-9445
Facsimile: (973) 535-0921

*ATTORNEYS FOR PLAINTIFF,*
*ALDERIAN TECHNOLOGIES LLC*